UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DENNIS WAYNE ROWSEY, JR.,

       Petitioner,

                                    Criminal No.: 4:11cr53
v.                                 Civil No.: 4:14cv15

UNITED STATES OF AMERICA,

       Respondent.

## OPINION AND ORDER

This matter is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence, filed by Petitioner Dennis Wayne Rowsey, Jr., ("Petitioner") pursuant to 28 U.S.C. § 2255. ECF No. 62 ("Pet'r's § 2255 Motion"). Petitioner's § 2255 Motion asserts that his conviction should be vacated because his counsel was ineffective in a number of ways. More specifically, Petitioner alleges that counsel was ineffective with respect to Petitioner's decision to enter a guilty plea, during post-plea cooperation, and at sentencing. The Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to the relief sought in his § 2255 motion. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 8(a). For the reasons discussed below, Petitioner's § 2255 motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the Federal Bureau of Investigation ("FBI") began investigating a drug trafficking organization headed by Petitioner. Statement of Facts at 1, ECF No. 31. On April 25, 2011, a confidential human source ("CHS 1"), who had interacted with Petitioner since at least October 2010, provided information to the FBI. Id. The information from CHS 1 involved Petitioner's conspiracy with others to distribute and possess with intent to distribute cocaine and cocaine base. Id.

On April 26, 2011, Petitioner contacted CHS 1 by telephone and asked him to bring a digital scale to Petitioner's work location at the Harbour Apartments in Newport News. Id. CHS 1 wore a concealed audio/video recording device during the delivery of the scale. Id. Upon arrival at the Harbour Apartments, Petitioner directed CHS 1 to an empty apartment. Id. Inside that apartment, CHS 1 observed Petitioner and another individual, Perry, with one ounce of powder cocaine. Petitioner stated that he had purchased the cocaine from an associate of Perry for $1,200. Id. at 2.

In 2011, CHS 1 participated in a series of controlled drug evidence purchases from Petitioner. See id. at 2-3. CHS 1 wore a concealed audio/video recording device during each such operation. See id. On May 19, 2011, CHS 1 purchased one ounce of crack cocaine for $1,300 from Petitioner at Petitioner's

home.  Id. at 2.  After that purchase, CHS 1 observed that approximately one ounce of crack cocaine and three quarters of an ounce of powder cocaine remained in a cookie tin in Petitioner's kitchen.  Id.  On May 20, 2011, CHS 1 purchased half an ounce of crack cocaine and half an ounce of powder cocaine for $1,300 from Petitioner at Petitioner's home.  Id. During that purchase, CHS 1 also observed Petitioner sell two grams of crack cocaine to another individual for $200 in Petitioner's kitchen.  Id.  In addition, CHS 1 observed a .45 caliber Ruger P90 pistol on top of Petitioner's refrigerator. Id.  During the operation, Petitioner also purchased five ounces of powder cocaine from an unidentified third party who was also present at Petitioner's home.  Id.  On June 6, 2011, Petitioner contacted CHS 1 and asked him to accompany Petitioner to meet with several other individuals at a restaurant in Newport News. CHS 1 and Petitioner drove separately to the restaurant that evening to meet with those other individuals.  Id. at 3.  At the restaurant, CHS 1 observed Petitioner sell one ounce of powder cocaine to another individual.  Id.  Thereafter, Petitioner invited CHS 1 back to Petitioner's home.  Id.  At Petitioner's home, CHS 1 observed approximately one ounce of crack cocaine and powder cocaine in the cookie tin in Petitioner's kitchen. CHS 1 also observed that the "pay/owe" dry erase board on the refrigerator had more names on it than CHS 1 had observed on

3

prior occasions. Id. Petitioner stated that he was going to purchase six ounces of powder cocaine later that evening. Id. On June 15, 2011, during a phone call between Petitioner and CHS 1, Petitioner stated that he had obtained half a kilogram of cocaine on June 13, 2011. Id. In addition, Petitioner stated that he had to "re-up" soon because he had sold so much cocaine in the preceding several days. Id.

On June 17, 2011, federal arrest and search warrants were executed on Petitioner and his residence. Id. During the execution of those warrants, law enforcement seized in excess of $34,000 from a safe located in a false space behind a wall, more than five ounces of cocaine, and two firearms. Id. In total, between 2010 and 2011, Petitioner conspired to distribute and possess with intent to distribute more than 500 grams of cocaine and 280 grams of cocaine base. Id.

On June 19, 2011, Petitioner retained Andrew M. Sacks to represent him in connection with this case. Sacks Affidavit at 1, ECF No. 73. After reviewing "the Arrest Warrant Affidavit in support of the Criminal Complaint, and based upon discussions that [he] recall[s] having with the prosecutor in the case, as well as Mr. Rowsey, [Mr. Sacks] concluded early on that the evidence against [Petitioner] as to the conspiracy charge under the Criminal Complaint was likely substantial." Id. at 2. Accordingly, Mr. Sacks "attempted to explore with the prosecutor

4

early on in the case a proposed agreed disposition that would include [Petitioner's] cooperation and substantial assistance to mitigate and diminish his potential confinement exposure." Id. However, the prosecutor did not react favorably to Mr. Sacks' initial requests and "ruled out any cooperation or substantial assistance agreement" because the prosecutor did not trust Petitioner based on a belief that Petitioner had lied to the prosecutor and Government agents at the time of his arrest. Id. Nevertheless, Mr. Sacks continued to advocate, with the prosecutor, for a potential agreed disposition that would include Petitioner's cooperation and substantial assistance because Mr. Sacks believed such an agreement would result in the least confinement for Petitioner. Id.

On July 22, 2011, a grand jury in Newport News returned an eight-count Indictment against Petitioner. ECF No. 11. In Count I, the grand jury charged Petitioner with Conspiracy to Possess with Intent to Distribute and Distribution of more than five hundred (500) grams of cocaine and more than 280 grams of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Indictment at 2. In Counts Two through Six, the grand jury charged Petitioner with possession with intent to distribute and distribution of cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1). See id. at 3-7. In Count Seven, the grand jury charged petitioner with maintaining a drug

house in violation of 21 U.S.C. 856(a)(2). Id. at 8. In Count Eight, the grand jury charged Petitioner with possession of a firearm in furtherance of a drug trafficking crime, distribution of cocaine and cocaine base. Id. at 9.

Following the indictment, the Government agreed to provide Petitioner with another chance to demonstrate his trustworthiness as a cooperator. Id. Mr. Sacks believed that "having [Petitioner] commence his cooperation prior to any guilty plea would greatly enhance both his credibility with the Government and his chances for a substantial assistance reduction of potential confinement." Id. at 3. Through a series of emails, Mr. Sacks arranged for Petitioner to cooperate with and debrief FBI agents prior to Petitioner entering a guilty plea. Pet'r's § 2255 Mot. at 19. Prior to Petitioner's first debriefing, Mr. Sacks "advised [Petitioner] to tell them the truth and provide information which might induce the US Attorney to offer [Petitioner] a favorable or lenient plea agreement." Id.

On September 20, 2011, Petitioner commenced his cooperation with the Government in an initial debriefing session. Mr. Sacks was present at the beginning of the debriefing between Petitioner and Government agents. Id. The Government provided a proffer letter to Petitioner granting him Kastigar use immunity for any statements made other than admissions of

6

violent crimes. Id. Mr. Sacks advised Petitioner to sign the letter, and Petitioner did so. Id. The FBI agents present at the meeting then began to question Petitioner. Id. at 20. Two minutes later, Mr. Sacks announced that he had to leave to attend another meeting. Id. Petitioner asked Mr. Sacks why he was leaving, to which Mr. Sacks responded "things look like they are going [okay] here, just be sure to tell the truth about everything." Id. During the debriefing, FBI agents asked Petitioner if he knew who killed Jeffrey Summers. Id. Petitioner told the agents that he "did not have any idea about who might have killed Summers." The agents also asked Petitioner about James Talley. Id. More specifically, the agents asked Petitioner if he knew "that [Mr.] Talley had ever hurt or killed anyone," to which Petitioner responded that he "did not know about any violent crimes done by [Mr.] Talley." Id. The agents arranged for another debriefing on October 4, 2011. Id. at 21.

On October 3, 2011, the Government informed Mr. Sacks that a superseding indictment would add charges for "[continuing criminal enterprise] and an additional firearm for a net increase of 35 mandatory years." Id. at 44. Assistant United States Attorney Eric M. Hurt further informed Mr. Sacks that "[w]hen I originally talked to [Petitioner] I told him these

7

charges would be in the original indictment but at your urging I did not put them in the first indictment." Id.

On October 4, 2011, Petitioner met with FBI agents for a second debriefing. At that debriefing, agents asked Petitioner the same questions about James Talley. Id. at 21. Petitioner again responded that he "did not know of any violent crimes or murders done by [Mr.] Talley." Id.

On October 11, 2011, pursuant to a written plea agreement, Petitioner appeared before United States Magistrate Judge Douglas E. Miller and pleaded guilty to Counts One and Eight of the indictment, charging him, respectively, with Conspiracy to Possess with Intent to Distribute and Distribution of more than five hundred (500) grams of cocaine and more than 280 grams of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). ECF No. 11. During the plea colloquy, Petitioner indicated that he had received a copy of the indictment, reviewed the indictment, and fully discussed all of the charges in the indictment with his attorneys. See Plea Hr'g Tr. at 6, Oct. 11, 2011; Resp. to Pet'r's § 2255 Mot. Ex. A. at 7, ECF No. 76-1. The Court described to Petitioner the elements the United States would have to prove to obtain a conviction under Counts One and Eight. Plea Hr'g Tr. at 7-8; Resp. to Pet'r's § 2255

8

Mot. Ex. A. at 8-9. Following each explanation, Petitioner indicated that he understood all the elements with respect to each count. See Resp. to Pet'r's § 2255 Mot. Ex. A. at 8-9. However, the Court described the elements required for a conviction under Count Eight as follows:

> That in the Eastern District of Virginia you committed a drug trafficking offense which would include the conspiracy described in count one of the indictment, that you knowingly possessed a firearm during and in relation to the commission of the drug trafficking offense or in furtherance of the drug trafficking offense. Possessing a firearm means that you either had a firearm on your person or that it was located in a place where you had the ability to exercise dominion and control over the firearm.

Id. at 9.

During the colloquy, the Court confirmed that Petitioner had read the plea agreement and that his attorney had fully explained the terms of the plea agreement to him. Id. at 12. In addition, the Court confirmed that no one, including Petitioner's attorney and the attorney for the United States, had made "any promise of leniency or any promise of any kind in return for [Petitioner's] guilty plea other than what is contained in [the] written plea agreement." Id. at 15. In response to the Court's thorough inquiry, Petitioner indicated that he had the opportunity to discuss his case in full with his attorney, conferred with Mr. Sacks regarding these matters, and discussed all of the facts of the case with his attorneys. See

id. at 16. Petitioner responded affirmatively to the Court's question whether Petitioner was "satisfied that your attorneys have fully considered all of the facts and discussed with you any possible defenses you might have to the charges against you." Id. Thereafter, Petitioner's attorney at the proceeding, Mr. O'Mara, indicated that he had discussed the facts in detail with Petitioner, as had Mr. Sacks, and that both Mr. O'Mara and Mr. Sacks were satisfied that there were no meritorious defenses that Petitioner might raise which, in their opinion, would result in a not guilty verdict. See id. at 20.

Prior to determining Petitioner's plea with respect to each count, the Court read verbatim from the indictment Count One and Count Eight. See id. at 21-23. After the Court read each charge in the indictment, Petitioner pleaded guilty to each charge. Id. In addition, Petitioner confirmed that he pleaded guilty to each charge because he was, in fact, guilty of each offense. Id. at 23. Before accepting Petitioner's guilty plea, the Court determined that Petitioner had reviewed the statement of facts, agreed with all of the facts contained in such document, and did not disagree with, or take exception to, such document. See id. at 24. The Court then accepted Petitioner's plea and continued the matter for sentencing.

The terms of the plea agreement required Petitioner to "cooperate fully and truthfully with the United States, and

provide all information known to [Petitioner] regarding any criminal activity as requested by the government." Plea Agreement at 5, ECF No. 30. In connection with that cooperation, Petitioner "agreed that, upon request by the United States, [Petitioner] will voluntarily submit to polygraph examinations to be conducted by a polygraph examiner of the United States' choice." Id. at 6; see also Pet'r's § 2255 Mot. at 21 ("My plea agreement provided that I would cooperate, debrief at Government request, take a polygraph test if the Government requested one . . . ."). Furthermore, the plea agreement noted that "[Petitioner] is hereby on notice that [Petitioner] may not violate any federal, state, or local criminal law while cooperating with the Government, and that the Government will, in its discretion, consider any such violation in evaluating whether to file a motion for a downward departure or reduction of sentence." Plea Agreement at 6. The plea agreement expressly stated that "nothing in this agreement prevents the Government in any way from prosecuting the defendant should the defendant provide false, untruthful, or perjurious information or testimony . . . ." Id. at 7. In addition, the plea agreement was "conditioned upon the defendant providing full, complete and truthful cooperation." Id. Under the plea agreement, if Petitioner,

commit[ed] or attempt[ed] to commit any additional
federal, state or local crimes, or intentionally
[gave] materially false, incomplete, or misleading
testimony or information, or otherwise violat[ed] any
provision of this agreement, then: (a) The United
States will be released from its obligations under
this agreement, . . . . The Defendant, however, may
not withdraw the guilty plea entered pursuant to this
agreement; (b) [Petitioner] will be subject to
prosecution for any federal criminal violation,
including, but not limited to, perjury and obstruction
of justice . . . .

Id. at 10-11; see also Pet'r's § 2255 Mot. at 21 ("The agreement

provided that if I gave false, incomplete or misleading

information to the Government during cooperation, the plea

agreement could be cancelled by the Government and all

information could be used against me that I had provided.").

On October 14, 2011, Petitioner met with agents in a third

debriefing session.  Counsel for Petitioner was not present at

that debriefing.  Pet'r's § 2255 Mot. at 21.  At the debriefing,

Petitioner "told the agents that [Mr.] Talley had admitted

killing Summers during a conversation with me and told them

[Mr.] Talley had killed Summers in order to rob him of drugs and

money kept at Summers['s] house."  Pet'r's § 2255 Mot. at 22.

Petitioner has admitted that his statement that Mr. Talley told

him that he had killed Summers was not, in fact, true.  See

Competency Hr'g Tr. at 65-67, 88-89, Sept. 13, 2013; Resp. to

Pet'r's § 2255 Mot. Ex. A. at 30-32, 53-54.  In light of the

inconsistency between that statement and Petitioner's statements

12

in prior debriefings, the agents asked that Petitioner undergo a polygraph examination.

On October 17, 2011, Petitioner submitted to a polygraph examination.  Mr. Sacks was not present at the examination. Pet'r's § 2255 Mot. at 22.  After the polygraph examination, the examiner left the room.  Competency Hr'g Tr. at 67; Resp. to Pet'r's § 2255 Mot. Ex. A. at 32.  Upon returning, she indicated that Petitioner "had some problems with answering some of the questions."  Resp. to Pet'r's § 2255 Mot. Ex. A. at 32. Petitioner did not hesitate in immediately indicating that his statement that Mr. Talley had confessed to him was not accurate. Id.  The examiner then asked Petitioner to give a written statement that he lied about Mr. Talley's purported confession to him.  Pet'r's § 2255 Mot. at 23.  The examiner prepared a written statement stating, in part, that "[t]he conversation between myself and [Mr.] Talley in which I previously reported is not true. [Mr.] Talley did not confess to me any involvement in the shooting."  Id. at 48; see Resp. to Pet'r's § 2255 Mot. Ex. A. at 33.  Petitioner signed that written statement.  Resp. to Pet'r's § 2255 Mot. Ex. A. at 33.  Following the polygraph examination, Mr. Sacks attempted to convince the Government to retest Petitioner; however, the Government rejected any further cooperation or debriefing with Petitioner.  Pet'r's § 2255 Mot. at 23.

On November 11, 2011, the Government filed a motion to cancel the plea agreement with Petitioner based on Petitioner's violation of the plea agreement through his false statements regarding Mr. Talley. ECF No. 34. Before the scheduled hearing on that motion, Petitioner filed a motion for a competency evaluation. ECF No. 38. After conducting a hearing, the Court granted Petitioner's motion and ordered a competency evaluation. ECF No. 43. A clinician with the Bureau of Prisons evaluated Petitioner and submitted a written report of that evaluation to the Court. ECF No. 46. The report included a finding that Petitioner was competent to stand trial and his apparent mental impairment was attributable to malingering. Thereafter, on June 12, 2012, the Government filed a second motion to cancel Petitioner's plea agreement. ECF No. 47. On September 13, 2012, after conducting a hearing, the Court granted the Government's motion and cancelled Petitioner's plea agreement based on his breach of that agreement.

As a result of the cancellation of the plea agreement, the Government indicated to Mr. Sacks that it intended to file a superseding indictment against Petitioner. See Pet'r's § 2255 Mot. at 32, 50. The Government indicated such superseding indictment would include a continuing criminal enterprise charge and an additional firearm charge—consistent with the Government's earlier stated intent to file a superseding

indictment, see Pet'r's § 2255 Mot. at 44—as well as perjury and
obstruction of justice charges, id. at 50.    The additional
charges would result in a net increase of thirty five mandatory
years.   Pet'r's § 2255 Mot. at 44 (Government stating in October
2011 e-mail that "[t]he superseding indictment will add CCE and
an additional firearm for a net increase of 35 mandatory
years.").

On October 31, 2012, the Probation Office filed a
presentence investigation report ("PSR") with the Court.   ECF
No. 49.   Initially, Petitioner objected to being attributed with
the drug weights calculated by the probation officer and argued
that the drug weights should be lower.    However, through
negotiations with the Government, Mr. Sacks obtained a proposed
resolution from the Government through an addendum to the plea
agreement in which the Government would agree not to further
prosecute Petitioner for the specific conduct described in the
indictment or statement of facts, or seek additional charges as
a result of Petitioner's false statements to law enforcement and
before the Court, if Petitioner agreed that the sentencing
guidelines stated in the October 31, 2012 PSR were correct.   See
Addendum to Plea Agreement, ECF No. 58; Pet'r's § 2255 Mot. at
50.   Mr. Sacks discussed the proposed addendum with Petitioner
and advised him to accept the proposed addendum and drop his
objections to the PSR to avoid a twenty-five-year consecutive

sentence. Pet'r's § 2255 Mot. at 32. Thus, Petitioner withdrew his prior objections to the calculation of drug weights in the PSR. See Def.'s Position with Respect to Sentencing Factors, ECF No. 54. On January 3, 2013, the Court sentenced Petitioner to a total term of imprisonment of 295 months. The Court sentenced Petitioner to a 235-month term on Count One and a 60-month term on Count Eight, to be served consecutively.

Petitioner timely filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. In addition, Petitioner filed a Memorandum of Law in support of his motion. ECF No. 64. After receiving an extension of time from the Court, ECF No. 71, the Government filed its response, ECF No. 76. Petitioner untimely filed a reply. Accordingly, Petitioner and the Government have fully briefed the matter and it is now ripe for review.

## II. STANDARD OF REVIEW FOR § 2255 MOTION

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence" pursuant to 28 U.S.C. § 2255. To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that

the sentence or conviction is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain relief, a petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion." Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. See In re Jones, 226 F.3d 328, 333 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" (quoting Davis v. United States, 417 U.S. 333, 343 (1974))). The existence of the right to pursue a collateral attack does not displace a direct appeal as the ordinary method for challenging a conviction or sentencing determination. United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). To the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1981).

The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-65. Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1992). "'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.'" United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (quoting Mikalajunas, 186 F.3d at 493). As for prejudice, it is not enough for a petitioner to demonstrate "a possibility of prejudice," but rather, he must show that errors "worked to his actual and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions." Frady, 456 U.S. at 170.

Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the

court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. Mikalajunas, 186 F.3d at 494. Actual innocence, however, "means factual innocence, not mere legal insufficiency" of a conviction. Bousley v. United States, 523 U.S. 614, 623-24 (1998); see Mikalajunas, 186 F.3d at 494 (indicating that a petitioner must demonstrate "actual factual innocence"). A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the

record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. See United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (quoting Massaro v. United States, 538 U.S. 500, 504-06 (2003)) ("'[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance' because the trial record is 'often incomplete or inadequate for [addressing such claims on direct review,]' thereby risking the failure of '[e]ven meritorious claims.'") (alterations in original).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court has interpreted the right to counsel as providing a defendant with "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). In order to demonstrate that defense counsel failed to provide effective assistance, in violation of the Constitution, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely

20

conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of this test articulated in Strickland.   United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of the Strickland test, courts "must be highly deferential." Id. at 689; see also Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.   Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687.   As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.   Courts should therefore "indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." Id.

The second prong of the Strickland test requires a petitioner to "affirmatively prove prejudice." Id. at 693. To meet this prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court applies a slightly modified prejudice standard when a petitioner alleges ineffective assistance associated with the entry of a guilty plea, requiring the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If the Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

In his motion, Petitioner requests that the Court vacate his sentence because his counsel provided ineffective assistance of counsel through numerous errors. Petitioner alleges that counsel provided ineffective assistance at three stages in his

prosecution: (1) with respect to plea negotiations and during the plea colloquy; (2) during Petitioner's post-plea cooperation with the Government; and (3) at sentencing. Furthermore, Petitioner argues that, at each stage, counsel provided constitutionally deficient assistance for multiple reasons. The Court will address, in turn, each of Petitioner's allegations of ineffective assistance of counsel. For the reasons stated below, the Court **DENIES** all such claims.

## A. Plea Proceedings

First, the Court considers Petitioner's contention that he received ineffective assistance of counsel during plea proceedings. Petitioner asserts four independent reasons counsel provided ineffective assistance during plea proceedings. First, Petitioner argues that counsel failed to adequately investigate and advise him that he had a defense to the conspiracy charge against him because the Government allegedly only had evidence that he conspired with a confidential informant, CHS 1. Second, Petitioner claims that counsel failed to investigate and advise him of a defense to Count Eight because there was no evidence that Petitioner's possession of a firearm furthered or advanced the drug distribution crime. Third, Petitioner asserts that counsel unreasonably negotiated a plea agreement in which Petitioner pleaded guilty to conspiracy to distribute 280 grams or more of cocaine base, even though the

statement of facts did not present facts attributing more than 100 grams of cocaine base to Petitioner. Fourth, Petitioner contends that counsel's failure to object when the Court allegedly "constructively amended" the indictment during the plea colloquy constitutes ineffective assistance of counsel.

### 1. Failure to Investigate Defense to Count I

Petitioner contends that his counsel was constitutionally deficient because Mr. Sacks failed to adequately investigate the law governing the charge of conspiracy in Count I. See Pet'r's Mem. Supp. § 2255 Motion at 10. Petitioner claims that Mr. Sacks erroneously believed that Petitioner could be convicted of the conspiracy charge based solely on his transactions with CHS 1. According to Petitioner, had counsel "conducted a reasonable investigation of relevant precedent and law" he would have known that Petitioner could not be convicted of conspiring with a Government agent. See id. at 11. Petitioner also argues that a reasonable investigation of relevant law would have revealed to Mr. Sacks that the evidence of other drug transactions in the statement of facts did not support a charge of conspiracy because those transactions were mere "buy-sell exchanges for cash." See id. at 13-15. However, both claims fail.

As an initial matter, Petitioner's sworn statements during the plea colloquy present a formidable barrier to his claims that counsel failed to adequately investigate meritorious

defenses to the conspiracy charge. At the plea hearing, Petitioner's affirmative responses to the Court indicated that Petitioner: had "the opportunity to discuss [his] case in full with [his attorney], Mr. O'Mara;" "conferred with Mr. Sacks regarding these matters;" "discussed all of the facts of the case with [his] attorneys;" and was "satisfied that [his] attorneys [had] fully considered all of the facts and discussed with [him] any possible defenses [he] might have to the charges against [him]." Plea Hr'g Tr. at 15 (emphasis added); Resp. to Pet'r's § 2255 Mot. Ex. A. at 16. (emphasis added) Thus, by his own sworn statements, Petitioner expressly indicated that he was satisfied that his counsel had considered any possible defense to the charges against him.

Moreover, Petitioner also admitted in open court that he was, in fact, guilty of the conspiracy charged in Count One. On the record, Petitioner, through his affirmative responses, indicated that he: had received and reviewed the indictment, Plea Hr'g Tr. at 6; had fully discussed all of the charges in the indictment with his attorneys, id.; and understood the elements the Government would need to prove to convict him under Count One, id. at 7. Thereafter, the Court read Count One of the indictment to Petitioner and Petitioner pleaded guilty to that charge because he was, "in fact, guilty" of that offense. Id. at 20-22.

"Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Such presumption creates "'a formidable barrier in any subsequent collateral proceedings.'" United States v. White, 366 F.3d 291, 296 (4th Cir.2004) (quoting Blackledge, 431 U.S. at 74). Because "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false" except in the case of extraordinary circumstances. United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

Accordingly, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. Here, having stated under oath that he discussed all of the facts of the case with his counsel and was satisfied that his attorneys had fully considered all of the facts and any possible defenses to the charges against him, Petitioner's contrary assertion in his § 2255 motion that Mr. Sacks failed to adequately investigate the law with respect to conspiracy are deemed "patently frivolous."

Furthermore, the evidence in the record demonstrates that Petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, nor shown that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hill, 474 U.S. at 59. Petitioner has shown neither that counsel's performance in investigating possible defenses to Count One was deficient, nor that he suffered any prejudice from any alleged deficiency in such investigation.

Petitioner fails the performance prong of Strickland because he admitted during the Rule 11 colloquy that he was satisfied that counsel had fully considered all of the facts and discussed any possible defenses. Plea Hr'g Tr. at 15. Even though Petitioner now contends that Mr. Sacks failed to adequately investigate a potential defense to Count One because Petitioner allegedly engaged in only buy-sell transactions with persons other than CHS 1, the evidence in the record suggests that Petitioner engaged in more than simply buy-sell transactions. Along with Petitioner's sworn statement that he was, in fact, guilty of the charge in Count One, there is also evidence in the record undermining Petitioner's contention that he only conspired with CHS 1 to distribute drugs. For example, the statement of facts clearly demonstrates the presence of a

"pay/owe" dry erase board in Petitioner's kitchen.   Statement of

Facts at 3.    Such a "pay/owe board" indicates that Petitioner

engaged in more than simply "buy-sell exchanges for cash"

because it suggests that Petitioner engaged in credit-based drug

transactions.   Cf. United States v. Edmonds, 679 F.3d 169, 174

(4th Cir. 2012) (stating that "a transaction involving a

consignment arrangement or the 'fronting' of drugs indicates

conspiracy to engage in drug trafficking beyond the immediate

distribution transaction, as the consignment implies a credit

agreement that looks to further transactions to secure income to

complete the original transaction."); United States v. Garcia-

Guizar, 160 F.3d 511, 519 (9th Cir. 1998) (stating that evidence

of a "pay-owe" sheet "may be probative of [the defendant's

guilt] with respect to charges including conspiracy to

distribute methamphetamine); United States v. Mendoza, 876 F.2d

639, 642 (8th Cir. 1989) (stating that evidence of "cards

containing 'pays' and 'owes,'" along with other evidence,

indicated that defendants were involved in a conspiracy); Castro

v. Sisto, No. CV 09-0582-JHN (DTB), 2010 WL 2384975, at *5 (C.D.

Cal. Apr. 5, 2010) (stating that record provided "some evidence"

that a defendant conspired to sell methamphetamine, in part

because of "Pay Owe" sheets found on the defendant's person).

This evidence further bolsters the Court's conclusion that Mr.

Sacks provided constitutionally sufficient assistance of counsel with respect to investigating any possible defense to Count One.

With respect to prejudice, Petitioner fails to demonstrate that, but for counsel's alleged failure to investigate defenses to Count One, he would not have pleaded guilty to that charge. Here, Petitioner stated under oath that he pleaded guilty to Count One because he was, in fact, guilty of that offense. Plea Hr'g Tr. at 20-22. Moreover, Petitioner stipulated, through the agreed statement of facts, that there was a factual basis for his guilty plea. Id. at 22-24; see Statement of Facts at 4. Thus, Petitioner's own sworn statements indicate that, even if counsel had conducted a more extensive investigation into possible defenses, Petitioner would not have insisted on going to trial on Count One because he was, "in fact, guilty" of the offense stated in Count One and there was a factual basis for such guilt. Therefore, Petitioner has failed to satisfy either the performance or the prejudice elements of Strickland. Accordingly, the Court **DENIES** Petitioner's motion with respect to that claim.

### 2. Failure to Investigate Defense to Count Eight

Petitioner claims that Mr. Sacks' performance constituted ineffective assistance of counsel because Mr. Sacks failed to adequately investigate a potential defense to Count Eight that the Government could not establish that Petitioner's possession

of a firearm actually furthered or advanced any drug distribution crime. See Pet'r's Mem. Supp. § 2255 Motion at 17-19. In essence, Petitioner attempts to argue that, through a failure to adequately investigate the law controlling Count Eight, Mr. Sacks did not advise Petitioner that the Government could not convict him under Count Eight because the Government could not prove an element of that offense. This claim fails for the same reasons Petitioner's other failure-to-investigate argument fails.

Petitioner has not demonstrated that counsel's performance fell below an objective standard of reasonableness. Petitioner's statements during the Rule 11 colloquy that he was satisfied that his attorneys had fully considered all of the facts and any possible defenses to the charges against him, render "patently frivolous" Petitioner's contrary assertions in his § 2255 motion that Mr. Sacks failed to adequately investigate the law with respect to Count Eight. See Lemaster, 403 F.3d at 221. Moreover, the fact that Petitioner had possession of a firearm on top of his refrigerator in the kitchen in which he sold drugs, during separate drug transactions with an unidentified third party and with CHS 1, Statement of Facts at 2, bolsters the reasonableness of Mr. Sacks' conclusion that Petitioner had no viable defense to Count Eight based on a failure of proof because such facts present

evidence of a nexus between Petitioner's possession of the firearm and his drug trafficking. See United States v. Moore, ___ F.3d ___, 2014 WL 5088136, at *5 (internal quotation marks and citation omitted) (emphasis added) (stating that "[a] number of factors may be considered" in determining whether possession of a firearm furthered or advanced drug trafficking, "among them: the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.").[1] Accordingly, Petitioner has not met the performance prong of Strickland.

Similarly, Petitioner has not demonstrated prejudice under Strickland. In open court, Petitioner indicated that he pleaded guilty to Count Eight because he was, in fact, guilty of that offense. Plea Hr'g Tr. at 21-22. Petitioner also stipulated, through the agreed statement of facts, that there was a factual basis for his guilty plea. Id. at 22-24; see Statement of Facts at 4. Thus, Petitioner's own sworn statements indicate that,

---

[1] To the extent that Petitioner now contests the statement of facts by claiming that it is incomplete because it did not state that CHS 1 unloaded the firearm located on top of the refrigerator, see Pet'r's § 2255 Mot. at 12, his sworn statement during the Rule 11 colloquy indicating that he did not disagree with or take exception to anything in the statement of facts, Plea Hr'g Tr. at 24, indicates that the Court should reject that contention. See Lemaster, 403 F.3d at 221.

even if Mr. Sacks had conducted a more extensive investigation into the law governing Count Eight, Petitioner would not have insisted on going to trial on Count Eight because he was, "in fact, guilty" of the offense stated in Count Eight and there was a factual basis for such guilt. Cf. United States v. Hoke, 442 F. App'x 851, 852 (4th Cir. 2011) (rejecting a defendant's contention that her plea was invalid based on an insufficient factual basis that she committed the crime charged because her sworn statements during a Rule 11 colloquy contradicted that contention). Therefore, Petitioner's claim that counsel failed to adequately investigate a defense to Count Eight does not satisfy the prejudice requirement under Strickland. Consequently, the Court **DENIES** Petitioner's motion with respect to that claim.

### 3. Plea Negotiations

Next, Petitioner contends that Mr. Sacks' performance was constitutionally deficient because Mr. Sacks advised him to plead guilty to charges that lacked a factual basis for all elements of the offense. See Mem. Supp. Pet'r's § 2255 Mot. at 25. The gravamen of Petitioner's ineffective assistance of counsel claim based on counsel's conduct in negotiating the plea agreement is that counsel unreasonably advised Petitioner to plead guilty to conspiracy to distribute 280 grams or more of cocaine base when the statement of facts attributed only 100

32

grams of cocaine base to Petitioner.  See id. at 22.  However, Petitioner's claim fails because it contradicts his sworn statements during the plea hearing and the statement of facts to which he agreed that establish that there was a factual basis for the charge that he conspired to distribute 280 grams or more of cocaine base.

By pleading guilty to Count One of the indictment, Petitioner admitted that he conspired to distribute 280 grams or more of cocaine base.  During the plea hearing, in his responses to inquiries from the Court, Petitioner indicated that he: had read the plea agreement and his attorney had fully explained its terms to him, Plea Hr'g Tr. at 11; had received a copy of the indictment, reviewed the indictment, fully discussed all the charges therein with his attorneys, and understood the elements necessary for conviction under Count One, including that the conspiracy involved 280 grams of cocaine base, id. at 6-7; and pleaded guilty to Count One of the indictment—after the Court read that Count verbatim from the indictment—because he was, in fact, guilty of that offense, id. at 21-22.  Thus, to the extent that the indictment expressly charged Petitioner with conspiracy to possess with intent to distribute 280 grams or more of cocaine base, Indictment at 2, and the plea agreement indicated that Petitioner was pleading guilty to conspiracy to possess with intent to distribute and distribution of more than 280

grams of cocaine base, Plea Agreement at 1, Petitioner's statements indicate that he understood that he pleaded guilty to conspiracy to possess with intent to distribute 280 grams or more of cocaine base. Furthermore, by pleading guilty to Count One, because he was, "in fact, guilty," of that offense, Petitioner effectively admitted that at least 280 grams of cocaine base were attributable to him.

Moreover, contrary to the assertions in Petitioner's § 2255 motion, the statement of facts expressly provides a factual basis for conviction under Count One. At the plea colloquy, Petitioner indicated that he agreed with all the facts contained in the statement of facts, did not take exception to anything in that statement, and agreed that the Government could prove all of the facts therein beyond a reasonable doubt. Plea Hr'g Tr. at 23-24. The statement of facts, to which Petitioner stipulated and agreed, Statement of Facts at 4, expressly states that "the defendant was responsible for conspiring to distribute and possess with intent to distribute more than . . . 280 grams of cocaine base . . . .," id. at 3. Despite the clear language of the statement of facts, Petitioner now contends that he received ineffective assistance of counsel because Mr. Sacks negotiated a plea agreement without a factual basis attributing more than 100 grams of cocaine base to Petitioner. However, Petitioner does not explain the inconsistency between his

current contention that the Government could attribute to him only 100 grams of cocaine base and his admission in the statement of facts that the Government could prove that he conspired to possess with intent to distribute more than 280 grams of cocaine base. In light of Petitioner's agreement in the statement of facts that he was responsible for conspiring to distribute and possess with intent to distribute more than 280 grams of cocaine base, Mr. Sacks' advice that Petitioner plead guilty to Count Eight was supported by a sufficient factual basis. See United States v. Pope, Criminal No. 3:07cr414, 2010 WL 4735758, at *2-3 (E.D. Va. Nov. 15, 2010) (unpublished). Accordingly, Petitioner has not established that counsel's performance in negotiating the plea agreement was constitutionally unreasonable under Strickland. Therefore, the Court **DENIES** Petitioner's ineffective assistance of counsel claim based on counsel's conduct in negotiating the plea agreement.

### 4. Failure to Object During Plea Colloquy

Petitioner's final claim of ineffective assistance of counsel predicated on counsel's conduct during plea proceedings concerns counsel's failure to object when the Court allegedly misstated the elements requisite for a conviction under Count Eight when the Court explained those elements to Petitioner. Before considering Petitioner's ineffective assistance of

counsel claim, the Court underscores that it makes no finding on the correctness of the Court's formulation of the elements of Count Eight.[2] Rather, the Court will assume, arguendo, that the Court erred in describing such elements to Petitioner, and the Court will only consider the extent to which counsel's failure to object to that alleged error constitutes ineffective assistance of counsel. For the reasons stated below, Petitioner's claim fails.

According to Petitioner, the Court erroneously explained the elements that the Government would have to prove to convict him under Count Eight. See Pet'r's Mem. Supp. § 2255 Mot. at 27-28. He contends that the Court "constructively amended" the indictment, causing him to plead guilty without notice of what the Government would be required to prove to convict him under Count Eight. Id. at 27. Petitioner argues that, in two ways,

---

[2] The Court notes that if Petitioner had attempted to assert a claim based on the Court's alleged violation of Rule 11, he would face the procedural default bar because he did not present such a claim on direct review. See Mikalajunas, 186 F.3d at 492-93; see also United States v. Bowman, 267 F. App'x 296, 300-01 (4th Cir. 2008) (unpublished) (holding that defendant had procedurally defaulted an alleged defect in Rule 11 proceeding by failing to raise the issue on direct appeal). In addition, in applying the procedural default actual prejudice standard, the fact that violations of Rule 11 are subject to harmless error review requires the defendant to show that the violation affected his substantial rights. Bowman, 267 F. App'x at 300 (citing DeFusco, 949 F.2d at 117). The Supreme Court has noted: "A defendant will rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255; and relief on direct appeal, given the plain-error standard that will apply in many cases, will be difficult to get, as it should be." United States v. Dominguez Benitez, 542 U.S. 74, 83 n. 9 (2004) (citation omitted).

the Court broadened beyond the terms of the indictment the proof that the Government could use to convict Petitioner. Id. at 28. First, the Court indicated that the Government could obtain a conviction under Count Eight using the conspiracy described in Count One of the indictment as a predicate offense, even though the indictment charged that the predicate offense occurred on May 20, 2011. Id. Second, the Court indicated that the Government could prove the nexus element, showing the connection between the predicate offense and possession of the firearm, by establishing either that Petitioner possessed that firearm during and in relation to the commission of the drug trafficking offense or in furtherance of a drug trafficking offense, rather than only showing possession in furtherance of a drug trafficking offense. See id. at 28-29 (emphasis added). In Petitioner's view, he received ineffective assistance of counsel because counsel failed to object to those alleged errors during the plea colloquy. Id. at 30.

The Federal Rules of Criminal Procedure require a court to explain the elements of the charged offense to a defendant prior to accepting his guilty plea to that offense. Under Federal Rule of Criminal Procedure 11,

> (b)(1) Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that

> the defendant understands, the following: . . . (G)
> the nature of each charge to which the defendant is
> pleading . . . .

Fed. R. Crim. P. 11(b)(1)(G).   In determining whether the court
has adequately complied with Rule 11, the Court of Appeals for
the Fourth Circuit has established the following standard: "a
'defendant must receive notice of the true nature of the charge
rather than a rote recitation of the elements of the offense.'"
United States v. Benton, 523 F.3d 424, 434 (4th Cir. 2008)
(quoting United States v. DeFusco, 949 F.2d 114, 117 (4th Cir.
1991)).     However, "the defendant need not receive this
information at the plea hearing itself. Rather, a guilty plea
may be knowingly and intelligently made on the basis of detailed
information received on occasions before the plea hearing."
DeFusco, 949 F.2d at 117 (internal quotation marks and citation
omitted).

        Importantly, even assuming the Court's description of Count
Eight's elements failed to comply with the standard set forth in
Rule 11, to establish ineffective assistance of counsel based on
counsel's failure to object to that error, Petitioner must make
a showing beyond simply demonstrating error on the part of the
Court.    Rather, "[w]hen a claim of ineffective assistance of
counsel is based on a failure to object to an error committed by
the district court, that underlying error must at least satisfy
the standard for prejudice that [a court of appeals] employ[s]

in [its] review for plain error." Gordon v. United States, 518
F.3d 1291, 1298 (11th Cir. 2008) (citations omitted).  To show
plain error, Petitioner has the burden of demonstrating that
"(1) an error was made; (2) the error is plain; and (3) the error
affects substantial rights." United States v. Massenburg, 564
F.3d 337, 342-43 (4th Cir. 2009) (citing United States v. Olano,
507 U.S. 725, 732 (1993)).  In the context of Rule 11, to show
that an error "affected substantial rights" Petitioner must show
that there is "'a reasonable probability that, but for the
error, he would not have entered the plea.'"    Id. at 343
(quoting Dominguez Benitez, 542 U.S. at 83.)   In addition, the
Court of Appeals for the Fourth Circuit will exercise its
discretion to correct such an error "only if the error
'seriously affects the fairness, integrity or public reputation
of judicial proceedings.'"    Id. (quoting Olano, 507 U.S. at
732).  For the purposes of resolving this motion, the Court will
assume, arguendo, that the alleged error in the Court's
description of the elements of Count Eight meets the first and
second elements in Massenburg.   See United States v. Simmons,
736 F.3d 1139, 1142 (8th Cir. 2013); see also United States v.
Moore, 703 F.3d 562, 570 (D.C. Cir. 2012); United States v.
Bell, 439 F. App'x 252, 254 (4th Cir. 2011) (unpublished).

    Nonetheless, the Court concludes that Petitioner has not
demonstrated plain error because he has not shown that any error

affected his substantial rights.  Petitioner has not shown a reasonable probability that he would not have pleaded guilty absent the Court's alleged error.  Although Petitioner now claims that he would not have pleaded guilty had he received an accurate description of the elements requisite for a conviction under Count Eight, see Pet'r's § 2255 Mot. at 7, the record and his sworn statements belie his assertion.  At the outset of the plea hearing, counsel for Petitioner indicated that Petitioner had reached a plea agreement with the Government to plead guilty to Counts One and Eight prior to the hearing because counsel confirmed the Court's understanding that "your client has reached a plea agreement with the Government pursuant to which [he will] plead guilty to two counts of the indictment pending against him."  Plea Hr'g Tr. at 2.  Thus, it is apparent that Petitioner made his initial decision to plead guilty on the basis of the indictment, in which Count Eight correctly listed the offense.  See Bell, 439 F. App'x at 254.  Moreover, prior to any alleged error on the part of the Court, Petitioner assured the Court that he had received a copy of the indictment, reviewed the indictment, and fully discussed all of the charges in the indictment with his attorneys.  Plea Hr'g Tr. at 6.  In addition, the Court read Count Eight verbatim from the indictment, accurately describing the charge, immediately prior to Petitioner's plea of guilty to that charge.  Id. at 21-22.

40

Therefore, to the extent that the indictment correctly listed the offense charged, Petitioner made his initial decision to plead guilty on the basis of the indictment, and Petitioner fully understood the charges against him through his review of the indictment and full discussion of the charges therein with his counsel, the record does not demonstrate a reasonable probability that Petitioner would not have pleaded guilty but for the alleged error on the part of the Court in explaining the elements in Count Eight. See Bell, 439 F. App'x at 254 (holding that appellant had not shown plain error when a district court described the elements of an 18 U.S.C. § 924(c)(1) offense using both "use and carry" and "possession" terminology because appellant made his initial decision to plead guilty on the basis of the indictment and confirmed during the Rule 11 colloquy that he had "reviewed the indictment, discussed the charges and his plea with his attorney, and understood the charges to which he was pleading guilty.").

In addition, the plea agreement, pursuant to which Petitioner pleaded guilty to Count Eight, also shows that Petitioner would have pleaded guilty even absent any error in the Court's description of the elements in Count Eight because that agreement correctly lists the offense. The description of Count Eight in the plea agreement properly includes only the "in furtherance of" language from Count Eight of the indictment.

Plea Agreement at 1. In the plea agreement, directly above his signature, the agreement states that Petitioner has "read this plea agreement and carefully reviewed every part of it with my attorney" and understands the agreement. Id. at 13. Furthermore, under oath, Petitioner affirmed that he had read the plea agreement, that his attorney had fully explained the terms of the agreement to him, and that he had the opportunity to discuss the case in full with his attorney. Plea Hr'g Tr. at 11, 15. Taken together, the plea agreement and Petitioner's sworn statements further demonstrate that Petitioner has not shown that there is a reasonable probability that he would not have pleaded guilty absent any error by the Court during its description of the elements of Count Eight. See United States v. Delgado-Hernandez, 420 F.3d 16, 26-27 (1st Cir. 2005) (holding that appellant had not shown that he would not have pleaded guilty if the court had used "in furtherance of" instead of "in connection with" language in describing the 18 U.S.C. § 924(c) nexus element given appellant's statements that he had received a copy of the charges against him and discussed the charges with counsel and that the indictment and plea agreement that appellant signed correctly used the statutory "in furtherance of" language.); see also Bell, 439 F. App'x at 254.

Accordingly, in light of Petitioner's sworn statements, the indictment, and the plea agreement, the Court holds that

42

Petitioner has failed to establish plain error because he has not shown a reasonable probability that he would not have pleaded guilty if the Court's alleged error in describing the elements of Count Eight had not occurred. Consequently, to the extent that Petitioner has not shown plain error on the part of the Court, he has not sufficiently demonstrated ineffective assistance of counsel through his counsel's failure to object to the Court's alleged error, see Gordon, 518 F.3d at 1298, and the Court **DENIES** his motion with respect to that claim.

### B. Post-Plea Debriefing

Next, the Court considers Petitioner's claim that he received ineffective assistance of counsel during his post-plea debriefing sessions with Government agents because counsel was largely absent from those sessions. Petitioner claims that he received ineffective assistance of counsel at debriefing based on two theories. First, he argues that counsel's total absence during his post-plea cooperation was per se prejudicial under United States v. Cronic. Second, Petitioner asserts that, even if the absence of counsel does not constitute prejudice per se under Cronic, the absence of counsel at his debriefings establishes ineffective assistance of counsel under Strickland's two-prong test. Both of these contentions fail.

Before addressing the merits of Petitioner's claims, the Court notes that the Fourth Circuit has not resolved the extent

43

to which post-plea cooperation qualifies as a "critical stage" of the criminal proceeding to which the Sixth Amendment right to counsel attaches.  However, one court of appeals has so held. United States v. Leonti, 326 F.3d 1111, 1117 (9th Cir. 2003); cf. United States v. Ming He, 94 F.3d 782, 793 (2d Cir. 1996) (exercising supervisory authority over courts to "rule that cooperating witnesses are entitled to have counsel present at debriefings, unless they expressly waive such assistance"). Accordingly, the Court will assume, without deciding, that the Sixth Amendment right to counsel attached to Petitioner's post-plea attempts at cooperating with the Government.  See Tinajero-Ortiz v. United States, 635 F.3d 1100, 1105 n.4 (8th Cir. 2011) (assuming, without deciding, that the potential cooperation phase is a critical stage of criminal proceedings for Sixth Amendment purposes); Wingo v. United States, 341 F. App'x 132, 134 (6th Cir. 2009) (unpublished) (assuming, without deciding, that first debriefing session was a critical stage of the proceedings for Sixth Amendment purposes).

### 1. United States v. Cronic prejudice per se

With respect to post-plea cooperation, Petitioner first argues, given that post-plea cooperation is a critical stage of the criminal proceedings, that under United States v. Cronic, the complete absence of counsel during post-plea debriefing sessions establishes prejudice per se and, therefore, that he

received ineffective assistance of counsel. However, such argument fails because the Fourth Circuit has not interpreted Cronic as expansively as Petitioner suggests. Additionally, even if Cronic applies, counsel's presence at the first debriefing up until Petitioner signed the proffer of Kastigar immunity demonstrates that he did not receive ineffective assistance of counsel.

Although Petitioner cites Cronic for the broad proposition that the total absence of counsel from a critical stage of the criminal proceedings establishes constitutional error, see Pet'r's Mem. Supp. § 2255 Mot. at 38, the Fourth Circuit has narrowed the application of Cronic. In United States v. Owen, the court noted that the statement in Cronic referencing the absence of counsel from a "critical stage" reflected the Court's usage, at that time, of the phrase to indicate the stage of the proceedings "both at which the Sixth Amendment right to counsel attaches and at which the denial of counsel necessarily undermines the reliability of the entire criminal proceeding." 407 F.3d 222, 228 (4th Cir. 2005) (emphasis in original) (citing Hamilton v. Alabama, 368 U.S. 52, 53 (1961)). However, subsequent to Cronic, the Court has "used the phrase 'critical stage' . . . in a broader sense, to refer to all proceedings at which the Sixth Amendment right to counsel attaches—including those at which the denial of such is admittedly subject to

harmless-error analysis." Id. (emphasis in original). Automatic reversal, akin to Cronic, is required only at a critical stage of the criminal process where the denial of counsel "'affects and contaminates' the entire subsequent proceeding." Id. at 226 (quoting Arnold v. Evatt, 113 F.3d 1352, 1361 (4th Cir. 1997) and citing Arizona v. Fulminante, 499 U.S. 279, 309-10 (1988)). Such situations include: arraignments at which any defenses not pleaded will be irretrievably lost, id. (citing Hamilton, 368 U.S. at 53-54), "when a full admission of guilt entered at an arraignment without counsel was later used against the defendant at trial, despite its subsequent withdrawal," id. (citing White v. Maryland, 373 U.S. 59, 60 (1963)), a conflict of interest in representation throughout an entire proceeding, Arnold, 113 F.3d at 1361 n.44 (citing Satterwhite, 486 U.S. 249, 257 (1988)), and total deprivation of counsel throughout an entire proceeding, id. (citing Satterwhite, 486 U.S. at 257).

In this case, Petitioner has not established that post-plea cooperation is a stage of the criminal proceeding at which the denial of counsel "affects and contaminates the entire subsequent proceeding." The absence of counsel during three debriefings after Petitioner had pleaded guilty does not affect and contaminate subsequent proceedings to a degree comparable to those instances recognized by the Fourth Circuit in Owen and

Arnold.   Indeed, to the extent that it is somewhat arguable whether post-plea cooperation even constitutes a "critical stage" of the criminal process at which the Sixth Amendment right to counsel attaches, see Tinajero-Orti, 635 F.3d at 1105 n.4, Petitioner has not sufficiently made the even greater showing that post-plea cooperation qualifies both as a critical stage of the criminal process and one at which the denial of counsel "affects and contaminates the entire subsequent proceeding."   Accordingly, the Court rejects Petitioner's argument that, under Cronic, post-plea cooperation is a critical stage of the criminal process at which the absence of counsel establishes prejudice per se.

In the alternative, even if Cronic applies to post-plea cooperation debriefings, the fact that those proceedings occurred after, with the advice of counsel, Petitioner had signed a Kastigar letter indicates that the per se rule in Cronic is inapplicable in this case.   At the initial debriefing prior to Petitioner's guilty plea, Mr. Sacks was present when Petitioner—based on Mr. Sacks' advice—signed a Kastigar letter granting him use immunity for any statements made to the agents other than admissions of violent crimes. Pet'r's § 2255 Mot. at 18.   Therefore, once Petitioner signed the Kastigar letter, subsequent debriefings "ceased to be adversarial proceedings where [his] rights were in danger of being 'irretrievably lost'

47

if not safeguarded by the presence of counsel." _Wingo_, 341 F. App'x at 134-35 (quoting _Van v. Jones_, 475 F.3d 292, 298 (6th Cir. 2007)) (holding that petitioner had not shown prejudice _per se_ based on the absence of counsel from debriefings because, even though absent from subsequent debriefings, counsel had been present, telephonically, at the debriefing in which petitioner signed a _Kastigar_ letter). Consequently, Petitioner's claim under _Cronic_ also fails for the alternative reason that counsel was present when Petitioner signed the _Kastigar_ letter prior to the debriefings from which counsel was absent.

## 2. Ineffective Assistance of Counsel Under _Strickland_

Petitioner next argues that he has met both prongs of _Strickland_ and shown that he received ineffective assistance of counsel, even if _Cronic_ does not apply. Regarding performance, Petitioner contends that counsel's performance fell below the objective standard of objective reasonableness because of the importance of debriefing and its effects on the execution of the plea agreement and sentence imposed. _See_ Pet'r's Mem. Supp. § 2255 Mot. at 41. As to prejudice, Petitioner argues that he likely would" not have recanted his prior statement if counsel had been present" and that "if counsel had been present, it is unlikely that the Government would have filed a motion to revoke the plea agreement." _Id._ Petitioner has not sufficiently demonstrated either element of _Strickland_.

48

The Court cannot conclude that Mr. Sacks' decision not to attend post-plea cooperation debriefings fell below the objective standard of reasonableness. As stated above, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Beyond bare assertions that post-plea debriefings affect the execution of the plea agreement and the sentence imposed, Petitioner has not presented any further evidence that Mr. Sacks' decision fell below the objective standard of reasonableness required under Strickland. Accordingly, the Court concludes that Petitioner has not demonstrated deficient performance under Strickland during post-plea cooperation and, therefore, his claim must fail.

Moreover, Petitioner's claim also fails because Petitioner has not demonstrated prejudice from his counsel's absence. To show prejudice under Strickland, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. Petitioner asserts that he suffered prejudice from counsel's absence because, if counsel

49

had attended the debriefings, according to Petitioner, he would not have made inconsistent statements about Mr. Talley's involvement with a murder and, therefore, the Government would not have cancelled his plea agreement. See Pet'r's § 2255 Mot. at 19; Pet'r's Mem. Supp. § 2255 Mot. at 32-33. He claims that agents pressured him into stating that he knew that Mr. Talley had committed a murder because if he did so he would receive help with his case. Pet'r's § 2255 Mot. at 22.

Nonetheless, despite Petitioner's argument to the contrary, the record indicates that the result of the debriefings would not have been different if Mr. Sacks had been present. The Government moved to cancel Petitioner's plea agreement not simply based on inconsistencies between statements Petitioner had made at different debriefings. Rather, the Government did so because Petitioner, as indicated in his admissions under oath, invented a story in which Mr. Talley purported to confess to Petitioner that he committed a murder, even though that story had no basis in fact. Competency Hr'g/Mot. Hr'g Tr. at 83-84, Sept. 13, 2012. Prior to the first debriefing session, Mr. Sacks had instructed Petitioner to tell the truth to the agents, and Mr. Sacks again instructed Petitioner to tell the truth when Mr. Sacks left the first debriefing. Pet'r's § 2255 Mot. at 19-20. Moreover, Petitioner was fully aware that the plea agreement required him to tell the truth during debriefing

sessions and provided that the Government could cancel the agreement if he did not tell the truth. Id. at 21; see also Plea Agreement at 7; Plea Hr'g Tr. at 11. Likewise, Petitioner knew that the plea agreement provided that he would submit to a polygraph test if the Government so requested. Pet'r's § 2255 Mot. at 21. Accordingly, Petitioner fully understood his obligation to speak truthfully to the agents during each debriefing. Nevertheless, during the October 14, 2011 debriefing, Petitioner deliberately made an untruthful statement when he told officers that Mr. Talley had confessed to a murder.[3] He lied to the agents and later admitted such lie in open court. Competency Hr'g/Mot. Hr'g Tr. at 83-84. The intentional nature of Petitioner's untruthfulness in the debriefing convinces the

---

[3] Petitioner's testimony with respect to the polygraph proceedings further supports the Court's conclusion that Petitioner's statement during the October 14, 2011 debriefing was a deliberate lie. After the October 14, 2011 debriefing, Petitioner submitted to a polygraph examination on October 17, 2011. Pet'r's § 2255 Mot. at 22. The officer conducting the polygraph left the room following the examination. Competency Hr'g/Mot. Hr'g Tr at 67. Upon returning, the officer did not tell Petitioner that he had been untruthful on the examination. Id. Instead, according to Petitioner, "her exact words" were that he "had some problems with answering some of the questions." Id. Petitioner then "immediately indicate[d] that the specific part of what [he] had said; that is, Mr. Talley confessed his involvement, was not accurate" and did not hesitate in telling the officer that. Id. Thus, it appears to the Court that, prior to the examiner informing Petitioner why some of his answers were problematic, Petitioner admitted that the story about Mr. Talley's confession was false. In other words, Petitioner anticipated that his statements about Mr. Talley's alleged confession had triggered a false response on the polygraph examination, before knowing which of his answers was problematic. This anticipation suggests an awareness of the falsity of that statement and bolsters the Court's determination that Petitioner made a calculated false statement during the October 14, 2011 debriefing.

Court that Petitioner has not shown a reasonable probability that Mr. Sacks' presence at the debriefings would have prevented Petitioner from lying to the agents.  Accordingly, Petitioner has not demonstrated prejudice under Strickland, even if Petitioner has shown that through his absence from post-plea debriefing, counsel's performance fell below the objective standard of reasonableness.  Therefore, the Court **DENIES** Petitioner's ineffective assistance of counsel claim based on counsel's absence from post-plea negotiations.

### C. Sentencing

Lastly, the Court considers Petitioner's claim that he received ineffective assistance of counsel during sentencing because of counsel's conduct during the sentencing process. Petitioner claims that counsel provided ineffective assistance by: failing to object to the reliability and veracity of CHS 1's statements concerning relevant conduct in the PSR and failing to call for an evidentiary hearing to test CHS 1's credibility through cross-examination; failing to object that the Government had breached a promise embodied in an email to induce Petitioner to plead guilty; failing to object to the application of a two-level enhancement under U.S.S.G. § 2D1.1(b)(12); and withdrawing the PSR objections in exchange for the addendum to the plea agreement.  As with Petitioner's other claims, these claims fail.

### 1. Failure to Challenge the Credibility of CHS 1

Petitioner contends that he received ineffective assistance of counsel because counsel did not subject some of the factual conclusions in the PSR attributing cocaine base to "adversarial testing."   See   Pet'r's   Mem.   Supp.   2255   Mot.   at   43-44. Petitioner   alleges   that   812   grams   of   cocaine   base   were attributed to Petitioner as a result of statements by CHS 1.   He contends that counsel should have objected to such statements by CHS 1 that established relevant conduct in the PSR and put the Government   to   its   proof.     However,   the   Court   holds   that Petitioner   has   not   met   his   burden   of   demonstrating   that counsel's   decision   fell   below   the   objective   standard   of reasonableness, as Strickland's performance prong requires.

Petitioner's allegations do not show that counsel acted in an objectively unreasonable manner in failing to contest CHS 1's statements or subject CHS 1 to cross-examination.   As the Fourth Circuit   has   recognized,   "[c]ounsel's 'strategic   choices   made after thorough investigation . . . are virtually unchallengeable . . . .'"   Gray v. Branker, 529 F.3d 220, 229 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 690-91) (first omission in original).   "In particular, decisions concerning the calling of witnesses are matters of strategy left to the attorney, and ordinarily cannot constitute ineffective assistance."   Luellen v. United States, Nos. 1:08cr102, 1:09cv681, 2011 WL 4565348, at

*5 (E.D. Va. Sept. 28, 2011) (O'Grady, J.) (citing <u>Jones v. North Carolina</u>, 547 F.2d 808 (4th Cir. 1977)).  In this case, the record indicates that Mr. Sacks thoroughly investigated whether to challenge the drug amounts in the PSR because Mr. Sacks initially objected to such increased drug amounts, which suggests that he was fully aware of the issues concerning facts in the PSR gleaned from CHS 1.  Pet'r's § 2255 Mot. at 32.  However, counsel made a strategic decision to advise Petitioner to accept the Government's addendum to the plea agreement, rather than maintain the objections to the PSR, because counsel believed the addendum would allow Petitioner to avoid a mandatory twenty-five-year consecutive sentence as a result of an additional 18 U.S.C. § 924(c) charge.  <u>Id.</u>  In light of counsel's thorough investigation of the matter, and the high barrier Petitioner must surmount to demonstrate that counsel's strategic decision not to call CHS 1 as a witness at sentencing qualifies as deficient performance, the Court concludes that Petitioner has not sufficiently demonstrated that counsel acted in an objectively unreasonable manner when he decided to advise Petitioner to accept the addendum to the plea agreement rather than challenging the PSR and forcing the Government to put CHS 1 on as a witness, thereby allowing counsel to cross-examine him.[4]

---

[4] In addition, Petitioner's claim with respect to counsel's alleged deficiency in failing to contest the findings in the PSR by

Therefore, the Court **DENIES** Petitioner's claim predicated on counsel's alleged error in failing to object and challenge the findings in the PSR based on CHS 1's statements.

**2. Failure to Object to Government's Alleged "Breach of Promise"**

Petitioner also contends that counsel provided ineffective assistance to him by failing to object "that the Government's advocacy of the higher drug amount alleged by the PSR was a breach of promises made by the Government to induce [Petitioner] to plead guilty." Pet'r's Mem. Supp. § 2255 Mot. at 45. According to Petitioner, in an email from the Government to Mr. Sacks, Assistant United States Attorney Eric Hurt stated that the Guidelines and sentence for the drug conspiracy offense would be ten years and Petitioner only decided to accept the plea offer after Mr. Sacks relayed "this promise." Id. That claim fails on its face because it satisfies neither the deficient performance nor the prejudice prong. Petitioner's statement under oath in open court confirming that no one,

---

subjecting CHS 1 to the adversarial testing of cross-examination also fails because Petitioner has not demonstrated a reasonable probability that the outcome of the proceedings would have been different if counsel subjected CHS 1 to such testing. Petitioner speculates that cross-examination might have uncovered a possible motive CHS 1 might have to fabricate evidence against him. See Pet'r's Mem. Supp. § 2255 Mot. at 44 (stating that "while he was not charged federally, [CHS 1] could have been seeking leniency in state criminal cases, could have been acting out of some grudge against [Petitioner], or could have set [Petitioner] up just to receive cash payments from FBI agents for making controlled buys."). Nonetheless, such speculation does not suffice to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," as Strickland requires. 466 U.S. at 693-94.

including Petitioner's attorney and the attorney for the United States, had made "any promise of leniency or any promise of any kind in return for [Petitioner's] guilty plea other than what is contained in [the] written plea agreement," Plea Hr'g Tr. at 14, renders "patently frivolous" his current claim that the Government made such a promise. See Lemaster, 403 F.3d at 221. Moreover, the integration clause contained in the plea agreement, that Petitioner had read and the terms of which counsel had fully explained to Petitioner, Plea Hr'g Tr. at 11, is valid, enforceable, and prevents the Court from accepting Petitioner's current contention that the Government "promis[ed]" that the Guidelines for Count One would result in only a ten-year prison term. See United States v. Barefoot, 754 F.3d 226, 242 (4th Cir. 2014).[5] Accordingly, the Court **DENIES** Petitioner's claim that counsel was constitutionally deficient in failing to object to the Government's recommendation of a sentence in excess of ten years of imprisonment on Count One.

## 3. Failure to Contest the Application of U.S.S.G. § 2D1.1(b)(12)

Next, Petitioner contends that counsel provided ineffective assistance by failing to contest the PSR's application of a two-level enhancement under U.S.S.G. § 2D1.1(b)(12). He claims

---

[5] Assuming, arguendo, that the email upon which Petitioner has based his claim of ineffective assistance of counsel actually constituted a representation from the Government, the fact that such email only states that the Government "anticipate[s] the sentence being 10 for Count One," Pet'r's § 2255 Mot. at 44, is fatal to Petitioner's claim.

that, because no Fourth Circuit authority existed interpreting that provision, counsel committed constitutional error for failing to object to the application of that enhancement on the basis that Petitioner's use of his home for drug distribution was not a "principal use" of that home within the meaning of Application Note 17. However, this claim fails.

Petitioner has not established that counsel's failure to contest the application of U.S.S.G. § 2D1.1(b)(12) constituted deficient performance under Strickland. "Counsel's 'strategic choices made after thorough investigation . . . are virtually unchallengeable . . . .'" Gray v. Branker, 529 F.3d 220, 229 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 690-91). For the same reasons stated supra Part III.C.1, Petitioner has not presented sufficient evidence to show that counsel acted unreasonably in his strategic choice to retract any objection to the PSR to allow Petitioner to receive the benefits of an addendum to the plea agreement that would prevent the Government from filing a superseding indictment or otherwise pursuing charges against Petitioner beyond Counts One and Eight. Consequently, his claim fails to satisfy the deficient performance prong of Strickland.

Likewise, Petitioner has also failed to demonstrate prejudice from counsel's failure to contest the enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) because he has not

sufficiently demonstrated that there is a reasonable probability a different outcome would have resulted but for counsel's failure to contest the enhancement. Under that provision, "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance" a two-level increase applies. U.S.S.G. § 2D1.1(b)(12). According to the Application Note regarding that enhancement,

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.

> Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1 cmt. n. 17. Although the Court need not, and does not, decide for the purposes of resolving this motion whether the two-level enhancement should have applied on the facts of this case, the Court concludes that Petitioner has not

carried his burden of establishing a reasonable probability that the Court would have sustained an objection to the enhancement. As noted above, the application notes to the Guidelines indicate that "[a]mong the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in . . . the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n. 17. Here, the record suggests that Petitioner "maintained" a premises because he owned a home and controlled access to such premises. See Statement of Facts at 1-4. Moreover, there is also significant evidence in the record— agents seized a significant quantity of cocaine, $34,000, and two firearms from Petitioner's home, id. at 4—suggesting that distributing drugs was one of Petitioner's principal uses of such premises. See e.g., United States v. Johnson, 737 F.3d 444, 447-49 (6th Cir. 2013); United States v. Christian, 544 F. App'x 188, 190-91 (4th Cir. 2013) (unpublished). Accordingly, in Petitioner's case, it appears likely that it would have been appropriate to apply the enhancement for "maintaining a premises for the purposes of manufacturing or distributing a controlled substance." Therefore, Petitioner has not sufficiently demonstrated prejudice from any error on counsel's part with respect to the application of U.S.S.G. § 2D1.1(b)(12).

Accordingly, the Court **DENIES** his claim that he received ineffective assistance of counsel because his attorney failed to object to the application of the U.S.S.G. § 2D1.1(b)(12) enhancement.

#### 4. Withdrawal of the Objections to the PSR

As his final claim of ineffective assistance of counsel, Petitioner contends that he received constitutionally deficient assistance of counsel because counsel withdrew all objections to the PSR: (1) in response to the Government's, allegedly impermissible, threat to indict Petitioner on another 18 U.S.C. § 924(c) charge; and (2) due to a failure to research the law governing multiple 18 U.S.C. § 924(c) offenses. Pet'r's Mem. Supp. § 2255 Mot. at 49-50. The Court **DENIES** both claims.

#### a. Vindictive Prosecution

Petitioner contends he received ineffective assistance of counsel because counsel failed to object to the Government's alleged threat that it would pursue a superseding indictment if Petitioner refused to accept the addendum to the plea agreement. Id. at 49. According to Petitioner, the Government's threat to seek a superseding indictment constitutes a vindictive prosecution in response to Petitioner's attempted exercise of his right to contest the PSR. Id. Consequently, Petitioner argues that he received ineffective assistance of counsel when his counsel failed to seek a writ of prohibition barring the

60

Government from initiating a vindictive prosecution against him. Id.

A prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." United States v. Wilson, 262 F.3d 305, 310 (4th Cir. 2001) (citations omitted). "To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." Id. (citations omitted). "If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motive may be presumed. To invoke such a presumption, a defendant must show that the circumstances 'pose a realistic likelihood of vindictiveness.'" Id. (internal quotation marks omitted) (quoting Blackledge v. Perry, 417 U.S. 21, 27 (1974)). Importantly, "vindictiveness cannot be shown by a prosecutor's decision to seek additional charges against a defendant who decides to plead not guilty." United States v. Watson, 537 F. App'x 213, 216 (4th Cir. 2013) (unpublished) (emphasis added) (citing Bordenkircher v. Hayes, 434 U.S. 357, 364-65 (1978)). A prosecutor may "openly present[] the defendant with the

61

unpleasant alternatives of forgoing trial or facing charges on which he [is] plainly subject to prosecution . . . ." Bordenkircher, 434 U.S. at 365.

Petitioner has demonstrated neither deficient performance nor prejudice regarding his claim that counsel erred by withdrawing the objections to the PSR in response to an allegedly vindictive prosecution by the Government in threatening to indict Petitioner for an additional firearm offense. In this case, Petitioner has not presented sufficient evidence that the Government attempted, through the threat of a superseding indictment, to punish Petitioner for exercising any of his constitutional rights. Indeed, the Government had stated its intent to seek a superseding indictment from the outset of this case. See Pet'r's § 2255 Mot. at 44 (indicating, on October 3, 2011 that "[t]he superseding indictment will add CCE and an additional firearm charge for a net increase of 35 mandatory years. When [the Government] initially talked to [Petitioner] I told him these charges would be in the original indictment but at [Mr. Sacks'] urging [the Government] did not put them in the first indictment"). Additionally, the Government's decision to seek a superseding indictment if Petitioner did not agree to the addendum to the plea agreement, was similar to "present[ing] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was

plainly subject to prosecution" in <u>Bordenkircher</u> because Petitioner was "plainly subject to prosecution" on an additional 18 U.S.C. § 924(c) charge as well as perjury and obstruction of justice charges. <u>See</u> 434 U.S. at 365; Pet'r's § 2255 Mot. at 50. Thus, counsel's failure to object to the Government's threat to seek a superseding indictment was not objectively unreasonable because the Government could permissibly make such threat. Similarly, Petitioner suffered no prejudice from counsel's failure to make such objection. Petitioner has not shown that there is a reasonable probability the outcome of the proceeding would have been different because the Government's threat was permissible and, therefore, counsel's attempt to challenge the Government's conduct would have failed.

### b. Multiple 18 U.S.C. § 924(c) Offenses

According to Petitioner, he received ineffective assistance of counsel because counsel failed to adequately research the law governing multiple 18 U.S.C. § 924(c) offenses prior to advising Petitioner to withdraw any objection to the PSR in exchange for the addendum to the plea agreement limiting further prosecution. Pet'r's Mem. Supp. § 2255 Mot. at 53-54. Petitioner argues that the Government's only evidence concerning multiple firearm offenses involved Petitioner's simultaneous possession of two firearms in his home and, therefore, that the Government lacked a sufficient factual basis to charge him for multiple violations

of 18 U.S.C. § 924(c). Id. at 50. Thus, Petitioner contends, counsel provided ineffective assistance when he advised Petitioner to accept the addendum to the plea agreement because the Government could not have brought the additional firearms charge against him.

Petitioner has failed to demonstrate that counsel's conduct fell below the objective standard of reasonableness with respect to researching the law governing multiple 18 U.S.C. § 924(c) charges. Petitioner correctly states that, in the Fourth Circuit, the unit of prosecution for section 924(c) offenses is the use, carriage, or possession of the firearm, rather than the predicate offense. United States v. Camps, 32 F.3d 102, 108-109 (4th Cir. 1994). However, from that proposition, it does not necessarily follow that one use, carriage, or possession of a firearm cannot result in multiple section 924(c) charges where that single use, carriage, or possession furthers multiple predicate offenses. Indeed, though other circuits disagree, e.g., United States v. Wallace, 447 F.3d 177, 187-88 (5th Cir. 2003), the Fourth Circuit has held that conviction for separate crimes can lead to multiple sentences under section 924(c), so long as those sentences do not violate the Double Jeopardy Clause, United States v. Khan, 461 F.3d 477, 493-94 (4th Cir. 2006). Thus, to the extent Petitioner's possession of the firearm may have furthered multiple predicate offenses, the

64

Government could have charged him with multiple section 924(c) offenses. See United States v. Guess, 482 F. App'x 832, 836 (4th Cir. 2012) (unpublished) (affirming multiple section 924(c) convictions based on multiple predicate offenses, though defendant simultaneously possessed two firearms and drugs); see also United States v. Oliver, 514 F. App'x 311, 315 (4th Cir. 2013) (unpublished). Given the multiple firearms in Petitioners' possession at the time of his arrest, Statement of Facts at 4, and the possibility that such firearms could have furthered multiple predicate offenses, the Court cannot conclude that it was objectively unreasonable for counsel to believe that the Government could file a superseding indictment against Petitioner including a viable additional section 924(c) charge. Therefore, after reviewing the record, the Court concludes that Petitioner has failed to demonstrate that counsel's investigation of the relevant law fell below the objective standard of reasonableness. Consequently, Petitioner's allegations have not met the deficient performance prong required under Strickland.

Additionally, Petitioner has failed to demonstrate prejudice under Stickland because there is not a reasonable probability, that but for the alleged deficiency in counsel's research of the applicable law, the result in this case would have been different. As stated above, the law of the Fourth

Circuit supports the possibility that the Government could have sought a superseding indictment charging an additional section 924(c) charge against Petitioner. Accordingly, even if counsel had done the "reasonable research" that Petitioner alleges he failed to do, there is not a reasonable probability that counsel would have advised Petitioner to reject the addendum to the plea agreement because such addendum would eliminate the possibility that Petitioner might receive an additional twenty-five-year consecutive prison sentence on a section 924(c) charge brought in a superseding indictment. Therefore, Petitioner's claim also fails because he has not demonstrated prejudice under Strickland.

### IV. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 Motion is **DENIED**.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that, because the Court has **DENIED** a certificate of appealability, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov.

§ 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, Andrew M. Sacks, and the United States Attorney's Office in Newport News, Virginia.

IT IS SO ORDERED.

/s/
Mark S. Davis
United States District Judge

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 29 , 2014